IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| DONALD WAYNE INGLE JR., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | 2:24-CV-140-Z-BR |
| § | |
| KAYLA BUTLER, *et al.,* § | |
| § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION TO DISMISS COMPLAINT**

Before the Court is the Complaint (ECF 3) filed by Plaintiff Donald Wayne Ingle Jr. ("Ingle") against Defendants Kayla Butler, Noella Alvarez, Lucia Viagas, Tanner Mortenson, William Miller, William Jones, Adam Gonzales, S. Patton, K. Loza and T. Britten, alleging violations of Ingle's civil rights under 42 U.S.C. § 1983. Ingle filed this lawsuit *pro se* while a prisoner in the Clements Unit of the Texas Department of Criminal Justice in Amarillo, Texas, and has been granted permission to proceed *in forma pauperis*. As such, his lawsuit is subject to preliminary screening as provided by the Prison Litigation Reform Act ("PLRA"). Pursuant to such screening and for the reasons stated below, the Magistrate Judge recommends that Ingle's Complaint be DISMISSED under 28 U.S.C. §§ 1915 and 1915A.

**I. STANDARD OF REVIEW**

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2017); *see also* Section 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of

1

whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings).

In evaluating the sufficiency of a complaint, the court accepts well-pleaded factual allegations as true, but does not credit conclusory allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). While courts hold *pro se* plaintiffs to a more lenient standard than attorneys when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (*citing Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II. LEGAL ANALYSIS

### A.   Factual Background.[1]

Ingle's Complaint arises from his efforts to change cells due to his fear that a violent altercation would occur with his cellmate. (ECF 3 at 20). On January 14, 2024, Ingle reached out to Defendant Noella Alvarez ("Alvarez") and asked her to move him, or move his cellmate, to a

---

[1]These background facts are taken from Ingle's Complaint (ECF 3) and questionnaire responses (ECF 11) and are assumed to be true for the purpose of evaluating the merits of Ingle's causes of action.

different cell. Alvarez tried to place him in Offender Pending Investigation ("OPI") status, but Ingle refused.[2] Alvarez told him that she would make the move the following day, but a move never occurred. Eight days later, Ingle asked Defendant Kayla Butler ("Butler") to separate him from his cellmate. Butler said she would investigate. The next day, Butler told him that, because he refused OPI, she was not going to help him. (*Id*. at 19). On January 24, 2024, Ingle again requested a separation from non-party officer Sherri Parks, who took his request to Butler and Defendant Tanner Mortenson ("Mortenson"). Again, because Ingle had refused OPI, nothing was done. (*Id*. at 20).

On January 25, 2024, Ingle asked a counselor for help. The counselor notified the unit classification committee, but nothing was done. (*Id*.). Ingle then sent a form to Defendant William Jones ("Jones") and asked Jones to separate him from his cellmate. Ingle also asked a physician's assistant for help, who sent him to talk to Defendant Lucia Viagas ("Viagas"). Viagas told him that, unless he accepted OPI, nothing would be done. (*Id*. at 21.). He then turned to an inmate life coach, who asked Ingle to write a short statement that the coach would present at an upcoming unrelated meeting with the unit chaplain and Jones. The life coach also approached Butler, who told him she was aware of the problem. (*Id*.).

On February 7, 2024, Ingle and his cellmate had a loud verbal altercation, and the cellmate told Ingle that he planned to pay someone $50 to beat Ingle up. Ingle again went to the life coach for help. The coach notified security, and Ingle was placed in a small holding cell for four hours. (*Id*. at 22). Viagas then moved Ingle to pre-hearing detention ("PHD") because he was given a disciplinary case by Butler for threatening his cellmate. (*Id*.). Ingle strongly disputes Butler's

---

[2]Ingle states that, in OPI, an inmate is placed in a holding cell for two to four weeks. The holding cells are those used to house offenders who violate TDCJ rules and are being held for a disciplinary hearing. He claims they are "a form of mental punishment." (ECF 3 at 20).

3

charge, stating that the cellmate actually threatened him, and that he had not talked to Butler at the time alleged, so he could not have issued the threat. (*Id.*). Ingle spent 20 days in PHD, and the disciplinary case was dismissed on February 21, 2024. (*Id.*).

Ingle was placed in high security on March 7, 2024, because Jones "didn't want any drama on his unit." (*Id*. at 23). Ingle remained in high security for approximately four months. (ECF 11 at 10).[3] He states that he filed grievances based on his failure to protect claim, and his allegation that Butler falsified documents by filing a false disciplinary case against him. As of the date of filing, he had not received a response to his Step 2 grievance. (*Id*.)

Ingle further alleges that Defendant William Miller ("Miller"), along with Mortensen, encouraged Butler to file the false disciplinary case. Ingle claims that Defendant Teresa Britten ("Britten") interfered with his access to the courts by withholding writing paper. (ECF 11 at 3). He also claims that Defendants Stephanie Patton ("Patton") and K. Loza ("Loza") also interfered with his access to the courts by unreasonably delaying responses to his grievances. (ECF 11 at 2, 8-9). Lastly, he claims that Defendant Adam Gonzales ("Gonzales") is liable for the other Defendants' conduct as supervisor of the Clements Unit.

Ingle filed this civil rights lawsuit on June 28, 2024, seeking compensatory damages and injunctive relief in the form of returning him to the training classes that he could no longer attend due to the false disciplinary case, and demoting all Defendants from their current rank and responsibilities as supervisors. Ingle further requests a declaration that the acts of which he complains violated his constitutional rights. For the reasons stated below, Ingle's Complaint

---

[3]Page citations to Ingle's questionnaire responses refer to the electronic page number assigned by the Court's electronic filing system.

should be dismissed.

**B.     Official Capacity Claims.**

Ingle's Complaint states that he is suing Defendants in their individual and official capacities. (ECF 3 at 14-15). Claims against Defendants in their official capacities are without merit in that they are simply another way of suing the TDCJ, and therefore the State of Texas. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State."). It is well established that suits for monetary damages against state officials in their official capacities cannot succeed under Section 1983. *See Almond v. Tarver*, 468 F. Supp. 2d 886, 892-95 (E.D. Tex. 2006) (collecting authorities and holding that claim against state official in his official capacity was barred by sovereign and Eleventh Amendment immunities). In addition, state officials acting in their official capacities are not "persons" under Section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). The claims against Defendants in their official capacities should be dismissed as frivolous.

**C.     Supervisory Liability.**

Ingle alleges that Gonzales is liable as a supervisor for the actions of the other Defendants. Under Section 1983, however, supervisors are not liable for the actions of others, including their subordinates. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Instead, only the direct acts or omissions of the supervisor will support a claim for individual liability under Section 1983. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 692 (1978); *Jones v. Lowndes County, Miss.*, 678 F.3d 344, 349 (5th Cir. 2012); *see also Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992) (a plaintiff bringing a Section 1983 action must "specify the personal involvement of each defendant"). A supervisor may be held liable under Section 1983 only when (1) the supervisor was personally

involved in the constitutional deprivation, (2) there is a causal connection between the supervisor's wrongful conduct and a constitutional deprivation, or (3) the supervisor implemented a policy so deficient that the policy itself violates constitutional rights and is the moving force behind a constitutional deprivation. *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987); *see also Peña v. City of Rio Grande City*, 879 F.3d 613, 620 (5th Cir. 2018); *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008).

To the extent that Ingle seeks damages from Gonzales in his capacity as a supervisor, Ingle fails to state a claim. Neither Ingle's Complaint nor his questionnaire responses allege facts establishing that Gonzales was personally involved in the allegedly wrongful actions. Ingle does not allege that Gonzales was personally involved in any decision that constituted a failure to protect Ingle, nor does Ingle allege that Gonzales implemented a specific unconstitutional policy that resulted in his injury. In fact, in his questionnaire responses, Ingle admits that Gonzales' status as a supervisor "is the only reason [W]arden Gonzales was named" in this lawsuit. (ECF 11 at 2). Ingle's claim against Gonzales should be dismissed as frivolous.

D.    **Failure to Protect.**

Ingle alleges that Defendants Alvarez, Butler, Mortenson, Jones and Viagas failed to protect him from potential harm from his cellmate by refusing to move him, as set forth above. Prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994); *see also Horton v. Cockrell*, 70 F.3d 397, 400-02 (5th Cir. 1995). Pursuant to *Farmer*, an inmate "must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials were deliberately indifferent to the inmate's safety. *Id.* at 834. The Eighth Amendment standard enunciated in *Farmer* applies to a prisoner's claim that prison officials failed to protect him from

harm inflicted by other inmates.

Not every injury suffered by a prisoner at the hands of another, however, rises to the level of a constitutional violation. *Id.* at 834. Nor are prison officials "expected to prevent all inmate-on-inmate violence." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003) (citing *Farmer*, 511 U.S. at 834). Only deliberate indifference, "an unnecessary and wanton infliction of pain or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Ingle alleges that Alvarez, Butler, Mortenson, Jones and Viagas failed to protect him from potential harm; thus, they were deliberately indifferent to Ingle's safety.

However, Ingle admits that he suffered no physical injury as a result of these Defendants' purported failure to protect him. Numerous cases have addressed whether injury is required to demonstrate a constitutional violation in the context of a failure to protect claim and have concluded that the dismissal is warranted when no injury has occurred as a result of the defendant's actions. *See Walzier v. McMullen*, 333 F. App'x 848, 851 (5th Cir. 2009) (upholding summary judgment in favor of the defendants where there was no proof of harm to the plaintiff from co-inmates and, "[a]bsent a showing that other inmates harmed [the plaintiff], there is no factual basis for a failure to protect claim"); *Castellano v. Treon*, 79 F. App'x 6, 7 (5th Cir. 2003) ([inmate's] failure-to-protect claim fails because "he concedes that he suffered no actual physical injury resulting from the prison officials' purported failure to protect"). Because Ingle suffered no physical injury, he cannot state a constitutional violation for failure to protect. His claim against Defendants Alvarez, Butler, Mortenson, Jones and Viagas should be dismissed as frivolous.

**E.     Access to the Courts.**

Ingle alleges that Britten interfered with his access to the courts by withholding writing paper (ECF 11 at 3) and that Patton and Loza interfered with his access to the courts by unreasonably delaying responses to his grievances. (ECF 11 at 2, 8-9). Prisoners have a right of access to the courts protected by both the First Amendment right to petition for redress of grievances and the Fourteenth Amendment right to procedural and substantive due process. *Bounds v. Smith*, 430 U.S. 817, 828 (1977); *Jackson v. Procunier*, 789 F.2d 307, 310 (5th Cir. 1986). The right of access to courts requires that inmates be allowed a reasonably adequate opportunity to file non-frivolous cases challenging their convictions and the conditions of their confinement. *Jones*, 188 F.3d at 325. In order to recover for a denial of access to the courts, an inmate must show that an "actionable claim [involving a challenge to a sentence or conditions of confinement] which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented ...." *Lewis v. Casey*, 518 U.S. 343, 356 (1996); *see also Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) (holding that to state a sufficient claim of denial of access to the courts, plaintiff must demonstrate that his position as a litigant was prejudiced as a direct result of the denial of access).

The "injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. Rather, a plaintiff must demonstrate that the lack of access has prevented him from filing, or caused him to lose, a pending case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action under Section 1983. *Id*. at 353-54 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)). As the right of access to the courts is not a "freestanding right," he must demonstrate actual injury resulting from the alleged denial of access. *Id*. at 351. Without a showing of an actual injury, plaintiffs lack standing to pursue claimed

denials of access to courts. *Id.* at 349. This requires a plaintiff to allege, at a minimum, that his ability to pursue a "nonfrivolous," "arguable" legal claim was hindered. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (quotation omitted). A plaintiff must describe the claim well enough to establish that its "arguable nature ...is more than hope." *Id*. at 416 (internal quotation marks omitted).

Ingle fails to meet this standard. He does not assert that the failure to provide paper or quickly respond to grievances prevented him from filing a lawsuit. Nor does he state that any pending lawsuits were dismissed as a result of the conduct of which he complains. In short, he has not shown that his ability to pursue a "nonfrivolous" or "arguable" legal claim was hindered by Britton, Loza or Patton. *See Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (inmate alleging denial of access to courts must demonstrate actual injury). Ingle has failed to state a plausible claim that he was denied access to the courts. As a result, Ingle's access to the courts claim should be dismissed as frivolous.

F.    **False Disciplinary Case.**

Ingle alleges that his due process rights were violated when Butler gave him a false disciplinary case for threatening his cellmate, which later was dismissed after Ingle had spent 20 days in PHD. (ECF 3 at 9). He further claims that Miller and Mortensen encouraged Butler to file the false disciplinary case. (*Id*. at 10). Ingle states that, as punishment, property was taken away from him[4] and he was removed from certain training classes. (ECF 11 at 3, 10). However, a false disciplinary case, without more, does not state a due process violation.

"Prison disciplinary proceedings are not a part of a criminal prosecution, and the full

---

[4]Ingle's claim that unspecified property was taken away from him by unspecified persons is impermissibly conclusory and does not, standing alone, state a viable claim. See *Chhim*, 836 F.3d at 469 (court need not credit conclusory allegations).

9

panoply of rights due a criminal defendant does not apply." *Wolff*, 418 U.S. at 556. To establish a due process violation in connection with a disciplinary hearing, a prisoner must establish that he has been denied a "'liberty interest' that the prison action implicated or infringed." *Richardson v. Joslin*, 501 F.3d 415, 418 (5th Cir. 2007). Liberty interests are "generally limited to freedom from restraint which ...imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Sandlin*, the Supreme Court found that disciplinary segregated confinement for thirty days was not an atypical, significant deprivation that created a protected liberty interest because it was not a major disruption in environment and did not affect the duration of the sentence. *Id*. at 486-87. Likewise, commissary and cell restrictions as punishment are merely changes in the conditions of confinement, that also do not implicate due process concerns. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). Inmates have "no liberty interest in being housed in any particular facility." *Yates v. Stalder*, 217 F.3d 332, 334 (5th Cir. 2000) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)).

A claim that a disciplinary charge was false, by itself, does not state a claim upon which relief may be granted. *See Harris v. Smith*, 482 F. App'x 929, 930 (5th Cir. 2012). Ingle's temporary loss of privileges and disciplinary segregation did not create a liberty interest, and did not implicate due process in the disciplinary hearing. *Lasater v. Herrera*, 729 F. App'x 362, 362-63 (5th Cir. 2018) (allegation of a false disciplinary report failed to state a claim, and due process was not implicated where plaintiff lost prison privileges); *Allums v. Phillips*, 444 F. App'x 840, 841 (5th Cir. 2011) (per curiam) ("Placement in administrative segregation or a change in custodial

classification as a result of a disciplinary infraction, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest, and, therefore, there is no right to due process."). Finally, while Ingle complains that his grievances were not handled in a timely manner, an inmate does not have a federally protected interest in having a complaint resolved to his satisfaction. *See Geiger*, 404 F.3d at 374-75.

Lastly, the punishment received by Ingle also does not give rise to a due process violation, in that removing him from training classes does not deprive him of a cognizable liberty interest. *See Morales v. Abbott*, No. 9:17-cv-94; 2024 WL 1189480 (E.D. Tex. Feb. 27, 2024) ("Prisoners generally have no constitutionally-protected property or liberty interest in participating in rehabilitation[] programs."); *Bulger v. Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir. 1995) (same); *Madison v. Parker,* 104 F.3d 765, 768 (5th Cir. 1997) (concluding that commissary and cell restrictions do not implicate due process concerns); *Taylor v. Swift*, 2015 WL 5834057, at *1 (5th Cir. Oct. 7, 2015) (per curiam) (finding that loss of recreation and commissary privileges does not result in a deprivation of a liberty interest). Accordingly, Ingle has failed to allege any due process violations against Butler, Miller or Mortensen, and the claims should be dismissed as frivolous.

**G.     Placement in High Security.**

Ingle alleges that Jones unilaterally placed him in high security because Jones did not want "drama" in his unit. Like the other punishment received by Ingle addressed above, being placed in high security does not rise to the level of a liberty interest. Instead, it is solely a change in the condition of Ingle's confinement that does not implicate due process concerns. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) ("any alleged due process or other constitutional violation arising from [custodial] classification is indisputably meritless") (quoting *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998) ("Inmates have no protectable property or liberty interest in custodial

11

classifications."). "It is well-settled that '[p]rison officials must have broad discretion free from judicial intervention in classifying prisoners in terms of their custodial status.'" *McCord v. Maggio*, 703 F.2d 909 (5th Cir. 1990) (quoting *Wilkerson v. Maggio*, 703 F.2d 909 (5th Cir. 1983)). Ingle's claim against Jones for placing him in high security does not state a constitutional violation and should be dismissed as frivolous.

**H.     Damages Requests.**

    **1.     Compensatory Damages.**

Even if Ingle had stated a valid claim, Ingle's request for compensatory damages fails due to the lack of personal injury. Under the PLRA, no "[f]ederal civil action may be brought by a prisoner ... for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). The Fifth Circuit has held that this requirement "applies to all federal civil actions in which a prisoner alleges a constitutional violation." *Geiger*, 404 F.3d at 375. The application of Section 1997e(e) is based on "the relief sought, and not the underlying substantive violation." *Id.*; *see also Mayfield v. Tex. Dep't of Crim. Just.*, 529 F.3d 599, 603, 605 (5th Cir. 2008) ("We have held that the application of [Section 1997e(e)] ... turns on the relief sought by a prisoner, and that it prevents prisoners from seeking compensatory damages for violations of federal law where no physical injury is alleged.").

    Ingle does not allege that he suffered any physical injury; he alleges only mental anguish because he was afraid his cellmate would harm him. (ECF 11 at 4, 6). Because he does not allege physical injury, he is not entitled to recover the compensatory damages he seeks. *See Hill v. Fagan*, No. 1:16-CV-185-BL, 2018 WL 3244617, at *3 (N.D. Tex. June 4, 2018) (recommending dismissal of prisoner's claim for compensatory damages against defendant because prisoner failed to allege a physical injury arising from the purported due process violation), *R. & R. adopted by*

2018 WL 3242274 (N.D. Tex. July 3, 2018). Ingle's claim for compensatory damages should be dismissed.

### 2. Demotion of Defendants.

Ingle asks the Court to demote Defendants and strip them from "all their rank, rights and responsibilities as supervisors." (ECF 3 at 12). Even assuming that Ingle states a valid constitutional violation against any or all Defendants, such relief is unavailable. "Federal courts are not prison managers" and injunctive relief in the form of an order to terminate a prison official's employment is not available in a Section 1983 action. *Mitchell v. Natchitoches Parish Sheriff Dep't*, No. 14-CV-2534, 2014 WL 5796036, *2 (W.D. La. Nov. 6, 2014); *see also Robinson v. Salmeron*, No. H-20-1160, 2020 WL 1673184, at *2 (S.D. Tex. Apr. 2, 2020) ("Plaintiff's request that the [c]ourt fire the defendants is denied, as the [c]ourt has no authority to terminate the defendants' employment" (emphasis omitted)); *Coleman v. Strickland*, No. 2:17-cv-133-KS-MTP, 2018 WL 5303341, at *2 (S.D. Miss. Aug. 9, 2018) (finding plaintiff's request to have defendant fired "unattainable in a § 1983 action" (internal quotation marks and citation omitted)), *R. & R. adopted by* 2018 WL 5305541 (S.D. Miss. Oct. 25, 2018). Because Ingle seeks relief that the Court cannot provide, his request should be dismissed as frivolous.

### 3. Injunctive Relief.

Ingle seeks a preliminary and permanent injunction, asking the Court to order Defendants to remove him from high security and place him back into his educational programs. (ECF 3 at 39; ECF 15). However, according to his questionnaire responses and grievance forms, it appears that Ingle has been moved from high security and was instructed that he should request reinstatement to his classes. (ECF 3 at 32, 11 at 10). Therefore, his request for injunctive relief is moot.

    **4.    Declaratory Relief.**

Ingle also seeks "a declaration that the acts and omissions described [in his Complaint] violated Plaintiff's rights under the Constitution and laws of the United States." (ECF 3 at 39). To obtain declaratory relief, a plaintiff must demonstrate that he is "likely to suffer *future* injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (emphasis added); *see Serafine v. Crump*, 800 F. App'x 234, 236 (5th Cir. 2020) (per curiam) (observing that although *Lyons* addressed injunctive relief, its "reasoning applies equally to declaratory relief"). Where the declaratory relief is premised on *past* acts, a plaintiff must establish "either continuing harm or a real and immediate threat of repeated injury in the future." *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992). "The threat of future injury must be 'certainly impending'; mere '[a]llegations of *possible* future injury' do not suffice." *Adams v. Pearl River Valley Water Supply Dist.*, No. 21-60749, 2022 WL 2829756, at *3 (5th Cir. July 20, 2022) (per curiam) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

Here, Ingle asks the Court to declare unlawful *past* conduct by the Defendants—thus, he has standing only if he has pleaded facts showing a continuing harm or immediate threat of repeated harm, which he has not. *Herman*, 959 F.2d at 1285. Accordingly, Ingle's request for declaratory and injunctive relief must be denied.

**I.    Leave to Amend.**

Ordinarily, a *pro se* plaintiff should be granted leave to amend his complaint prior to dismissal. *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). The district court is not required to allow such an opportunity, though, if the prisoner's claims are clearly frivolous, *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994), or if the prisoner has pled his best case in the current complaint. *Mendoza-Tarango v. Flores*, 982 F.3d 395, 402 (5th Cir. 2020). Ingle has fully

responded to the Court's questionnaire and set out his claims in adequate detail in his 42-page Complaint with exhibits. Further amendment would be futile because he cannot overcome the lack of personal injury resulting from Defendants' alleged actions, which is required under the PLRA for his claim for compensatory damages to proceed, and his requests for injunctive and declaratory relief are not cognizable. Ingle has pleaded his best case; therefore, leave to amend is unnecessary.

## RECOMMENDATION

For the reasons stated above, the Magistrate Judge concludes that Ingle's claims should be DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and that Ingle be issued a strike within the meaning of 28 U.S.C. § 1915(g).

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED April 1, 2025.

*(signature)*
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28

U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).